All right, Ms. Steenholt, we'll hear from you. At least your instruction was briefed. Thanks for quoting it. Were you the lawyer in the trial? I was not, no. Nobody wants to send up the trial lawyers in a case like this. We have an appellate division in Northern. I thought maybe they were fleeing. No. Go ahead. We'll hear your argument. May it please the court. My name is Rachel Steenholt, and I represent Mr. Waters. We are asking this court to vacate Mr. Waters' convictions and remand for further proceedings. Starting with count one, the parties agree the jury instruction for this count was erroneous. The jury instruction was erroneous because it included a hybrid of two different definitions, sexual act and sexual contact. The statute required a sexual act, which is defined as the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. But the jury instruction defined sexual act as the intentional touching, not through the clothing, of the genitalia, groin, inner thigh, or buttocks of CW with the same level of intent. So the jury instruction allowed the touching of the thigh, buttocks, and groin in addition to the genitalia. CW's testimony contributed to that problem. CW used the term middle to refer to her body, but the term middle is never defined to exclude the overbroad terms. But it was defined, wasn't it, to include specifically the genitalia? I'm sorry? It was defined in the trial to specifically include That's correct. Genitalia, so why is there a reasonable probability that the jury would have convicted on some part of the body that wasn't ever discussed in the trial? Well, I think the important part here is that what the information that we have is that middle is never clearly defined to exclude this. It doesn't state specifically genitalia. We have CW, she circles Exhibit 14. So the circle that she drew on Exhibit 14, that is a picture of a naked child. That is the only direct evidence where CW, where she tells us in her own words how she defines a middle. So you'll see on that drawing that two of the overbroad regions included in the incorrect term that was utilized are included in that drawing. You can see the inner thighs included there and you can see that the groin is. And then we have Dr. Hamilton's testimony which doesn't clear up this overbreath problem. So Dr. Hamilton testified that CW's definition of middle did include genitalia. But importantly, there is nothing in the record to show that CW's use of the term middle exclusively refers to the genitalia. In fact, we actually have testimony from Dr. Hamilton that in her experience, somebody often uses the term middle to discuss that general region or area of their body. And so because it is reasonably probable that the verdict would have been different had the jury instruction accurately reflected the elements of the offense. Reversal. Why is it reasonably probable? It's reasonably probable. Do you think the jury might have said that he didn't touch the genitalia but he touched the inner thigh? Inner thigh and groin. What? Why is that a? A reasonably probable finding. A reasonably probable occurrence given the whole record in the case. Yeah, it's reasonably probable. There are two other convictions that he gets convicted of. And so those could be actions that lead to those other acts. Intercourse and oral intercourse. So. Say that again. What's your point there? My point is that, my point is that, that, you know, touching the groin or the inner thigh could be relevant in terms of like an attempt towards these other counts of conviction. The intercourse, the oral sex. He was convicted of those two things. Correct, yep. Both of which involve genitalia though. Yep, they do. But what's specific to count one is that we have this touching where it is not clear that it specifically could have been genitalia. And that is the government's burden to prove. They could have asked pretty easily, you know, a few specific follow-up questions of exactly where the child was touched. You do see that on the intercourse conviction where they say, you know, they get into more detail on that. So the CW used no other descriptive words than middle? Correct. What about the way she says the middle was used without being too graphic? She talks about how the middle was used. His middle and hers. Up and down. Go ahead. Yes, so. It does not imply, in other words, that middle means genitalia. On the other count, she does discuss his middle and her middle. But to the specific transcript portion of the sexual contact, there is discussion of hand movements and stuff that just really frustrates the appellate record. And again, that could have been cleared up with more specific question of it. But I don't think that we still have this overbroad term of how middle is as applied to all three of the counts. But there is more specification when discussed those other counts. Some of these more graphic details that spells those out. Turning to the evidentiary issue. Is evidence, is Exhibit 14 available? It is. Is it in the, I know it's in the trial record. It's not in the appellate record in any form now, right? Correct. And does it show markings on it? It does. Circling, are there markings? Yep, yep, it does. Okay, good. Is there more than one circle? There isn't. Okay, I couldn't tell quite from the briefs. Yep. Proceed. So, turning to the evidentiary issue. The district court abuses discretion by allowing the jury to hear that CW touched another child because Garrett Waters touched her. Because this evidence was substantially more prejudicial than probative, it was inadmissible under Rule 403 and reversal is required. Can I help narrow, get a narrowing of your argument? Are you saying that the jury shouldn't have heard any of it or is it simply that it shouldn't have been heard or the jury shouldn't have heard it from the adult? To clarify, it is that the jury shouldn't have heard any of it. Because as I understood at trial, there was no objection to CW talking about it from defense, but there was an objection with a fairly extensive conversation about the admissibility of the testimony from the adults. Is that accurate? It isn't. I do want to clarify that point because it's important. So, defense counsel does object to the CW talking about this at all. Actually, that does start as early as RDoC 32, I believe it is. There's reference of, we don't want CW to discuss this incident at all. But then maybe says, oh, well, if CW gets into it, then okay, that's okay. Yeah. Does that undo the objection? It doesn't to that point. So, I think you're referencing a specific line that the government points out in the briefing. And, you know, if you look at that contextually in that part of the back and forth, and these issues are back and forth pretty extensively, in context, you can see that defense counsel says this should not be included. It imputes this improper behavior on CW's behalf onto Garrett Waters. Both parties agree that abuse of discretion applies. That's in the briefing. And then over defense counsel's objection, that's when the district court makes that definitive ruling. And based on the 401, 403 interplay. So, the district court specifically, the finding that it makes is that this testimony from CW should be permitted for two reasons. So first, it's that CW is allowed to explain what happened between her and Mr. Waters. And then second, it's to explain how this matter got reported. So neither of these reasons should have kept the court from excluding this testimony under Rule 403's balancing test. CW doesn't need this other incident with this other child to explain what Mr. Waters did to her. CW did explain what she alleged happened between her and Mr. Waters, and that is found on transcript pages 102 to 109. Explaining what she did to another child when Mr. Waters was not even present was really of no relevance. Instead, what it does is it imputes CW's inappropriate behavior onto Mr. Waters. And to the extent that that is relevant, when balanced under Rule 403, the limited relevancy of this information does three things. It confuses the jury. Even the district court asks, what is the jury supposed to do with this information? And the government's pretty clear. CW touched this child, so that means Mr. Waters must have touched CW. That's what they're supposed to do with this information. But that misleads the jury because it allows them to convict based on this conduct with this other child with Mr. Waters not even present. So it allows them to convict based on conduct that's really outside of the offenses that are charged. Is it different, though, coming from CW as part of her story of what happened and what she says Mr. Waters did to her? Isn't that different than it coming out from an adult who then the inferences are supposed to be, well, because she did this to the little two-year-old and it must have been that the defendant did it to her. Those seem to be two different types of evidence, and tell me if I'm wrong. I think you're right. That goes to this relevancy question, I believe, because CW is explaining in her mind what happened to her and what she did and why she did it. I do want to make an important point. She explains that Garrett taught her this, not that he did this to her in the transfer pages. There is that. But also, really, there's three charges here. What matters most is only two people were there between Garrett and CW. She was given the opportunity to explain what did he specifically do to you. I think this whole issue with this other child just really brings us down this other route that under 403's balancing test, I just don't think it passes the muster. All right. All right, I think I will reserve the remainder of my time for rebuttal. Thank you for your argument. Mr. Colliner, we'll hear from you. Thank you. May it please the Court, my friend and colleague, Ms. Steinholt. I'm Kevin Colliner for the U.S. Attorney's Office here presenting for the government. I'll turn to this jury instruction issue first. Both sides have talked about U.S. v. Fast Force. Of course, that was, as the Court knows well, that was a case that came down after the Brugier opinion and we had some, for lack of a better word, cases in the hopper for which juries had decided convictions based upon an incorrect jury instruction and, of course, the government then had to come up here on appeal and try to defend those convictions where, in that case, nobody thought that jury instruction was anything but the pre-Brugier instruction. This is the same issue, but opposite. Here, it's clear from the record that nobody thought the jury instruction was incorrect. Not raised below. There's no argument about the jury instruction. No one was arguing anything. That just makes it plain error. Get to a real argument. Okay. Well, in order to overcome that, they have to show something in the record that would make the Court question whether the jury would have decided differently, right? And what do they point to? They point to one thing in the record and that's the argument on the judgment of acquittal, right? Not an argument in front of the jury. Nothing in the closing by the defense counsel. Nothing in cross-examination. And by the way, even that argument in the judgment of acquittal was an argument that assumed that the correct element was genitalia. So there really is nothing in this record that could convince this Court that a jury, if properly instructed, would have done anything but what it did. I also want to talk about whether the instruction is in and of itself plainly erroneous. There's a difference in this from a lot of the other cases where you have an element that's just entirely omitted. Here's one that's- I thought your brief said it was wrong. It's incorrect, certainly. It's the sexual kind. Go ahead, make your point. The point I'm trying to make is does it meet the plain error standard? Was it plainly clear and obvious error? And, you know, Judge Colleton, in your dissent in Fast Horse, you talked about whether or not a jury instruction left room for a jury to decide correctly. You said that's not the stuff of plain error. Here, certainly, a jury could have looked at that incorrect definition and said, well, genitalia's there and they talked about genitalia. Certainly, the jury could have decided correctly but for the surplusage of the additional means. It's more to whether there was prejudice. That goes to where there's prejudice. The other part of your dissent in Fast Horse is you talked about when an instruction is ambiguous and open to an unconstitutional interpretation, we reverse only if the ambiguity is sure to have this prejudicial effect. Were the other three body, I think there were three, groin, inner thigh, and buttocks, were those words ever, I didn't do a control whatever to search the transcript, were those words ever uttered? I don't, I didn't either. I was looking for them as I read through the record here. I didn't see any other than that one little argument in the McQuill motion to the court. So, you know. So how does this happen? Human error. I think that's. The government proposed the instruction? I don't believe so but I'm not positive so I don't want to say that necessarily. The instructions were settled before the trial began in this case and read to the jury. You think the judge proposed it? I don't know if this was a court proposed instruction or not. I guess I shouldn't say I don't believe so without knowing so I'll leave it at that. Yeah, it was. I thought you might have checked since it's a major issue in the case. But go ahead. I read through the pretrial conference transcript and. It also might prevent it from happening again if somebody dug to the bottom of it and see how this happened. Yeah, certainly. The other part of that instruction is that particular instruction also recited the charging language in the indictment. The indictment itself only charged the term genitalia and not those other terms. Charging is important, right? Because we're looking as whether as a whole. Why did the jury get the indictment? The language of the indicted count was in the instruction. It talked about how, it's addendum page eight here. In a separate place in the instruction? The first part of the instruction was about how the jury, what the indictment read. And then it listed the elements. So you're saying addendum page eight. Oh, I see where it says count one, aggravated sexual abuse. Right. I see. Yeah. There it lists intentional touching of the genitalia. Exactly. And then down below it adds the other things. Right. So in other words, the jury was being told, this is what the government is charging. And here's the element. It lists genitalia. It also, that's why I call it surplusage, right? Because maybe that's not the right term for this. Probably not, but I understand. But my point is, is it's not as though the jury was being told, hey, you can choose any of these things with no bounds. Talk about the harmless prejudice, abundant evidence sort of point about how good or bad the victim's testimony. Sure. This court has dealt with this question of sort of imprecise anatomical terms from child victims of sex abuse cases many, many times. This case is directly in line with the cases in which those convictions have been affirmed. I mean, even the term middle, that's a term that you see across this court's jurisprudence on this question. She was consistent throughout her testimony and throughout the way others, like the doctor, described how she described genitalia. She called it her middle. And there's this anatomical drawing, Judge Benton, it's Exhibit 14, if it's not- By the way, I saw it. Go ahead. Okay. Thanks to the guiding judge. Go ahead. One thing I'd point out about that is it's not a case where that circle on that drawing is large. It's a fairly small circle. The, all of the, I mean, the question about what had happened between her and the other child, the term used there was middle. Judge Benton, you mentioned the, you know, the kind of perhaps more anatomically specific evidence with respect to the later counts. There, there was a discussion of, you know, we had to prove penetration, right, for one of the counts. And so there was a discussion of where did his middle go between that line in my, you know, so we also, of course, have the stuff that a jury can make reasonable inferences from on that other count. And I don't want to go into graphic detail, but there's a graphic detail that could really only mean to a reasonable juror that there'd been a sexual encounter with this child involving a condom. So, you know, there was, you know, I think the consistency of the use of that term, the anatomical drawing, the kind of corroboration that that term was what this child used when the medical examiner did the exam and talked specifically about genitalia. I think that all adds up to the stuff that reasonable inferences can certainly be made. I mean, I would, in terms of cases on the topic, White Bull is almost directly on point. Again, 646F, third, 1082. There, there was this question of, well, that anatomical drawing in the circle, could that also mean the groin? There, the court said that's a meritless argument because we're in the realm of sufficiency where we're talking about reasonable inferences that can be drawn. I'll talk about the evidentiary issue that's been raised. Judge Kelly, you asked the question of doesn't this make it kind of different in that, first of all, it's coming from the child, but there's sort of, it's not just that this, that it happened, but it's that she identified the defendant in her statement. And I mean, that's how the investigation began. But you had that information from law enforcement, correct? Because I think that the district court was pretty careful in making sure that the reasons for introducing that piece of evidence were taken care of. So that was already with an officer. That's correct. That's correct. So the law enforcement officer, the investigator testified before C.W. testified. No objection on the agents, right? No objection on the agents. Before C.W. testified and said, you know, there was sexualized behavior between children without specifying, certainly without saying that the defendant was identified in that, then C.W. testified, was allowed under the court's ruling to answer those questions. And then the later questioning of adults, true, the adults were not allowed under the court's ruling to testify that directly. Yeah. Was that a violation of the district court's order? Because the district court was pretty clear and pretty thorough with the counsel in talking through this. And I thought that the ruling was pretty clear. The adults are not going to get to talk about this. And then there were pretty direct questions from government counsel. Certainly, at least to one witness, yeah. Yeah. It was after C.W. had testified to all that. And so in a sense, I'm not answering your question directly. I know that. Was it a direct violation of the court's order? Well, at that point, there was no objection to it. You know, of course, at trial, sometimes things kind of go that way, that something that was hotly contested in the beginning is not hotly contested after it's out of the bag. And I think the prosecutor's understanding is you can't call these adults and have this come in through them and then call the child witness. But certainly, it was not what the court intended when those questions were asked. No objection to it. On appeal, they agree that it's a plain error review on that. But it certainly is cumulative at that point. And harmless, nonetheless, in the sense that, well, it's cumulative. So unless there are further questions from the court, I am. Maybe you can find out how this happened with the instructions so it doesn't recur. We don't want to have the problem recur. Thank you for the argument. Thank you, Your Honor. We'll hear rebuttal. Ms. Dino? Thank you. I want to start first with Judge Kelly's question about doing this controlled find for inner thigh or groin. No, that's not present in the transcripts. But I think we should look at the drawing, Exhibit 14. There's that visual depiction where that introduces that this could be a possibility. And so just because it wasn't specifically a stated inner thigh or groin, we do have this window that gets opened through the drawing, and that's never clarified. Also, there was this discussion about the jury instruction. The actual jury instruction also includes that language from the indictment of genitalia. And to that point, the jury instruction tells them what they have to convict based off of. Inner thigh and groin were included in that part of the instruction that tells the jury this is what you have to convict based off. But isn't the point that a common sense jury reading the whole instruction might be less likely to rely on those other parts of the body when the opening paragraph says the charge is that he touched the genitalia, and the whole trial was about genitalia? Well, we dispute that the whole trial was necessarily about genitalia. The whole trial talked about genitalia and never mentioned any of these other body parts. I think we've established that. Yes. But to the question about the jury being able to deduce. Well, since it's your burden to show, they probably would have relied on the other body parts. I'm just wondering if the fact that the first paragraph focuses on genitalia. I don't think that that changes the nails. I don't think that that moves the needle. It doesn't move the needle at all. No. No. Because the jury instruction, again, the part that the jury pays close attention to is what am I supposed to do? I'm a jury member. What am I supposed to find? This element, this element, this element, this element. One of the elements included groin and inner thigh. That was circled in Exhibit 14. And so I think that that leads them to that result. That was everything that I was planning on covering. So if there's anything, I have some time left. If there's anything that. You're not required to use all of your time. So we appreciate your argument. Thank you very much to both counsel. The case is submitted. And the court will file a decision in due course. That concludes the argument session for the day and for the week. The court will be in recess until further call of the docket.